**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| GWEN JACKSON, | Case No. 1:14-cv-177 |
| Plaintiff, | Beckwith, J.<br>Bowman, M.J. |
| v. | |
| CAROLYN W. COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Gwen Jackson filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.     Summary of Administrative Record**

On March 10, 2011, Plaintiff file application for Disability Insurance Benefits (DIB) alleging a disability onset date of May 1, 2010, due to mental and physical impairments. (Tr. 225-237). Plaintiff later amended her onset date of disability to August 2, 2011. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On March 11, 2013, ALJ Peter Boylan held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. (Tr. 37-75). On

April 10, 2013, the ALJ denied Plaintiff's applications in a written decision. (Tr. 12-36). Plaintiff now seeks judicial review of the denial of her application for benefits.

Plaintiff was 53 years old at the time the ALJ issued his decision. (Tr. 225). She has a GED and past relevant work as a caregiver, certified nursing assistant, correctional officer, customer service rep and clerk. (Tr. 352). She alleges disability primarily due to low back and leg pain, neck and shoulder problems, obesity, depression and anxiety.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical and lumbar spines, status post laminectomy, mood disorder, obesity and degenerative joint disease." (Tr. 17). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> She can only occasionally climb ramps and stairs and she should never climb ladders, ropes, and scaffolds; she can occasionally stoop, crouch and crawl; she can frequently kneel; she is limited to occasional overhead reaching bilaterally; she is limited to simple, routine, and repetitive tasks; she is not able to perform at a production rate pace such as generally associated with assembly line work, but she can perform goal oriented work, such as generally associated with positions such as office cleaner; she is limited to simple work related decisions; she is limited to frequent interaction with supervisors and coworkers and only occasional interaction with the public; and, she is limited to tolerating occasional changes in a routine work setting.

(Tr. 19). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ

concluded that while Plaintiff is unable to perform her past relevant work, significant other jobs exist in the national economy that Plaintiff could perform including such jobs as silver wrapper, office helper and routing clerk. (Tr. 27). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly evaluating Plaintiff's nervous and mental impairments; 2) improperly evaluating Plaintiff's physical impairments; 3) improperly evaluating Plaintiff's subjective complaints of pain; and 4) committing various vocational errors. Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a

significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

*1. Evaluation of Plaintiff's mental impairments*

Plaintiff's first assignment of error asserts that the ALJ should have incorporated the specific work related limitations found by state agency psychologist Leslie Rudy.  Plaintiff further asserts that the ALJ should have given more weight to nurse practitioner Brenda McKinstry's January 2013 opinion that, among other things, Plaintiff had marked limitations in social functioning; marked limitations in maintaining concentration, persistence, and pace; and that her mental abilities in a variety of areas prevented her from meeting competitive standards.  Plaintiff's assertions will be address in turn.

*A.     Dr. Rudy*

Dr. Rudy reviewed the evidence of record in December 2011.  (Tr. 115-116).  Dr. Rudy determined that plaintiff had moderate limitations relating to persistence and pace.  She also found that Plaintiff was moderately limited in her ability to complete a normal work week due to her psychological symptoms and that Plaintiff is capable of

performing 3 to 4 step tasks in an environment with flexible production standards and schedules.

In evaluating the opinion evidence, the ALJ assigned significant weight to Dr. Rudy's findings. In this regard, while not verbatim, the ALJ's RFC incorporated Dr. Rudy's findings. As noted by the Commissioner, the ALJ's RFC's limitation to simple, routine, and repetitive tasks reasonably accommodated Dr. Rudy's opinion that Plaintiff could perform three-to-four step tasks. (Tr. 29-30); *see Edmunds v. Comm'r of Soc. Sec.,* 2010 WL 3633768, at 7 (E.D. Mich. 2010) report and recommendation adopted by 2010 WL 3633768 (E.D. Mich. 2010) ("The RFC limiting Plaintiff to simple, routine, and repetitive work is consistent" with [a doctor's] finding that Plaintiff can "carry out simple one or two step job instructions"). Additionally, the RFC reasonably accommodated Dr. Rudy's limitation to flexible production standards by precluding Plaintiff from performing at the strict pace of a production line.

*B. Ms. McKinstry*

In December 2011, Plaintiff started receiving case management services through the Central Community Health Board ("CCHB"). At CCHB, Plaintiff worked with her case manager to help manage her medical care and to connect her with medical services. Namely, Plaintiff saw Nurse Practitioner Brenda McKinstry throughout 2012 for medication management of her mental health symptoms. In January 2013, Ms. McKinstry opined that Plaintiff had marked limitations in social functioning; marked limitations in maintaining concentration, persistence, and pace; and that her mental abilities in a variety of areas prevented her from meeting competitive standards.

6

The ALJ determined that Ms. McKinstry findings were not consistent with the treatment notes from Central Community Health Board.  As outlined by the ALJ, such notes indicate that Plaintiff has friends and do not make not of the Plaintiff having any significant problems getting along with others.  Plaintiff was also able to care for her infant grandson, as well as her mother and grandmother.  Furthermore, Ms. McKinstry assigned Plaintiff a global assessment of functioning (GAF) score of 55—which suggests only moderate, not marked symptoms. (Tr. 1219).  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 502 n.4, 503 (6th Cir. 2006) (internal quotation marks omitted) (citing American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. text revision 2000) (DSM-IV-TR) (A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflict with peers or co-workers)). The ALJ properly determined that Ms. McKinstry's findings were not entitled to deference based on such inconsistencies.  20 C.F.R. § 404.1527(d)(3) (more weight is given to those medical opinions that are "more consistent ... with the record as a whole[.]").

Moreover, under the Regulations a nurse practitioners is a not an "acceptable source" whose opinion was entitled to any special weight. (Tr. 22). See Social Security Ruling 06-03p; Social Security Ruling (SSR) 06-03p (opinions from other sources cannot establish medically determinable impairments and are not entitled to controlling weight); *Hosmer v. Comm'r of Soc. Sec.,* 2014 WL 3015733 at *10 (S.D. Ohio 2014) (opinions from nurse practitioners not entitled to the special deference afforded to opinions from treating medical sources).  Indeed, an ALJ may reject the opinion of nurse

7

practitioner simply because it clashes with the opinion of an acceptable medical source like a psychologist. SSR 06-03p. Such is the case here. In assessing Plaintiff's mental RFC, the ALJ gave controlling weight to the findings of Dr. Schmitgossling as well as the state agency psychological consultants all of whom determined that Plaintiff's moderate mental limitations did not preclude sustained work activity.

In sum, the undersigned finds that the ALJ reasonably assessed Nurse McKinstry's evaluation of Plaintiff's mental functioning, regardless of the frequency or nature of her interaction with Plaintiff.

*2. Evaluation of Plaintiff's Back Impairments*

Plaintiff's second assignment of error asserts that the ALJ erred in weighing the opinion evidence related to her back impairments. Specifically, Plaintiff contends that the ALJ unreasonably afforded great deference to the findings of state-agency physician Dr. Gerald Klyop's December 2011 opinion over the July 2012 opinion of Dr. Bruce Siegel, a one-time examining physician retained by Plaintiff.

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)). More weight is generally given to an opinion offered by a medical source who has examined the

claimant over an opinion offered by a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). More weight is given to opinions supported by "relevant evidence" such as "medical signs and laboratory findings[.]" 20 C.F.R. § 404.1527(d)(3). Further, more weight is given to those medical opinions that are "more consistent ... with the record as a whole[.]" 20 C.F.R. § 404.1527(d)(3). After assessing the weight afforded to medical source evidence, ultimately, an ALJ can properly rely on the conclusions of a nonexamining, record reviewing physician to support an RFC assessment. *See Sullivan v. Comm'r of Soc. Sec.,* No. 1:07cv331, 2009 WL 648597, *13 (S.D.Ohio Mar.11, 2009). Such is permissible "because the Commissioner may view nonexamining sources 'as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Id.* (citing Social Security Ruling 96–6p). Opinions offered by nonexamining physicians "are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Id.* (citing 20 C.F.R. § 404.1572(d), (f)). Thus, "under some circumstances, [opinions from nonexamining doctors can] be given significant weight." *Linton v. Astrue,* No. 3:07cv00469, 2009 WL 540679, *8 (S.D. Ohio Mar 2, 2009).

    Here, Dr. Klyop opined that Plaintiff could do a reduced range of light work while Dr. Siegel opined that Plaintiff met the listing for disorders of the spine, and could not, among other things, lift 10 pounds, stand for 2 hours, or sit for more than 2 hours. (Tr. 127-29, 1063-66, 1070-71).

Here, Dr. Siegel revered the medical evidence and examined Plaintiff in July 2012 at the request of Plaintiff's attorney. Upon examination, Dr. Siegel found that Plaintiff's impairments met listings 1.04 and 1.02. Notably, he did not specify which section of 1.02 he believed the Plaintiff met. Dr. Siegel also completed a residual functional capacity assessment form wherein he found that Plaintiff could only sit for two hours total in an eight-hour workday and stand/walk for less than two hours total throughout an eight-hour workday. Dr. Siegel further determined that Plaintiff could rarely lift and carry items, even items less than 10 pounds. Additionally, Dr. Siegel determined that Plaintiff would miss more than four days of work per month due to her impairments or treatment for her impairments.

In evaluating the opinion evidence, the ALJ afforded "little weight" to Dr. Siegel's assessment. In so concluding, the ALJ noted that Dr. Siegel was hired by Plaintiff's attorney in order to provide a one-time assessment relating to her disability. The ALJ also noted that Dr. Siegel's findings relating to the Listing of Impairments raise questions as to whether Dr. Siegel thoroughly reviewed the listings he referenced before rendering his opinion. Last, the ALJ found that Plaintiff's fairly conservative treatment history is not consistent with Dr. Siegel's findings. In contrast, the ALJ gave significant weight to the findings of the state agency medical consultants who found that Plaintiff could perform light work with some postural limitations. Their findings were consistent with the record evidence and Plaintiff's reports concerning her recent activity, which included caring for ill family members. (Tr. 26).

Citing *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399 (6th Cir. 2009), Plaintiff contends that the ALJ should have favored Dr. Siegel's more recent opinion because

10

Dr. Siegel examined her, Dr. Siegel specializes in pain management, and he noted her use of a cane. Plaintiff's reliance on *Blakely* is misplaced.

In *Blakely,* the ALJ credited the opinions of consulting physicians over the opinion of the plaintiff's treating physician. The Sixth Circuit held that "[i]n appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources." (Id., at 409, quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996)). However, in *Blakely* the court reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment ... by Blakely's treating sources," and that the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakely*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir.2007)). Nevertheless, the Sixth Circuit reiterated the general principle that an ALJ's failure to provide adequate explanation for according less than controlling weight to a treating source may be excused if the error is harmless or de minimis, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." Id. at 409 (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 547 (6th Cir.2004)). Under *Blakely*, then, an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he should articulate his reasons for doing so. If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or de minimis. *Swartz v. Astrue*, No. 10–605, 2011 WL 4571877, at *8 (S.D.Ohio Aug.18, 2011) (Bowman, MJ) ("an ALJ may choose to credit the opinion of a

11

consultant who has failed to review a complete record, but he should articulate his reasons for doing so") (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir.2009)).

Here, the state agency physicians rendered their findings in December 2011, whereas Dr. Siegel examined Plaintiff in July 2012. Upon evaluation of the complete record, including the opinion evidence, Plaintiff's treatment history and testimony at the administrative hearing, the ALJ determined that the opinions of the state agency physicians were consistent overall with the evidence of record and clearly articulated his rationale for finding so. (Tr. 25). In addition to citing the clinical and diagnostic record evidence, the ALJ states that Plaintiff engages in "routine duties" involving the reduced range of light exertion that the ALJ found was her RFC. (Tr. 25-26). The ALJ also noted that Plaintiff's condition has been relatively stable with conservative treatment. (Tr. 25). As such, the undersigned finds that the ALJ's decision comports with the requirements set forth in *Blakely.*

Here, the ALJ properly evaluated the opinions of Dr. Kylop and Dr. Siegel in accordance with 20 C.F.R. § 404.1572 and controlling law. The ALJ noted that counsel's retention of Dr. Siegel detracted from his credibility. *See Polzin v. Comm'r of Soc. Sec.,* 2013 WL 1148187, at *3, *6 (E.D. Mich 2013) (noting no problems with ALJ's consideration that doctor was hired by Plaintiff's counsel). A doctor "acting only in the capacity of a one-time consultative physician rather than a treating source is 'entitled to no special degree of deference.'" *Barker v.Shalala*, 40 F.3d 789, 794 (6th Cir.1994) (citing *Atterberry v. Secretary of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir.1989).

More importantly, Plaintiff does not contest the ALJ's conclusion that Dr. Siegel wrongly opined that Plaintiff met listing 20 C.F.R. Subpt. P, App. 1 §§ 1.02, 1.04, 1.00B2b. (Tr. 1065). As the ALJ noted, no evidence shows that Plaintiff met several of the requirements for these listings, like nerve root compression, spinal arachnoditis, or a complete inability to walk effectively (such as a need for multiple assistive devices). (Tr. 18, 25).

The ALJ also reasonably discredited Dr. Siegel's extreme limitations in light of Plaintiff's conservative treatment. *See Roby v. Comm'r of Soc. Sec.*, 2009 WL 3672515, at *4, n.3 (E.D. Mich. 2009) (conservative treatment helps discredit treating physician's and examining physician's opinion of disabling limitations). As the ALJ noted, in over two years prior to Dr. Siegel's evaluation, Plaintiff received only conservative treatment—like medications and physical therapy—and even worked as babysitter and an extraction clerk. (Tr. 21, 23, 920, 361-63). See *Gauthier v. Comm'r of Soc. Sec.*, 2014 WL 1304915 at *18 n.4 (E.D. Mich 2014) (conservative treatment includes infrequent use of narcotic medication and infrequent physical therapy).

Plaintiff further argues that the ALJ improperly discounted Plaintiff's use of a cane as outlined by Dr. Siegel. However, as noted by the Commissioner, Dr. Siegel, like all of the other doctors, never mentioned that Plaintiff needed one. (Tr. 24, 1064). To the contrary, Dr. Siegel himself confirmed that the medical evidence did not corroborate Plaintiff's complaints of knee pain. (Tr. 24, 1064). Furthermore, to the extent Plaintiff argues that the ALJ erred by failing to mention specific evidence related to Plaintiff's low back pain: (*i.e* August 2, 2011 MRI, Nurse De Haven's August 28, 2011, notation of lumbar radiculopathy, and an ER doctor's purported June 2012 notation of

13

chronic sciatica into the legs). Contrary to this assertion, the ALJ's decision indicates that he considered such evidence. Notably, an ALJ need not mention every piece of evidence in the record in rendering his decision. *See Kornecky [v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 508 (6th Cir.2006) ] ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party").

For these reasons, Plaintiff's second assignment of error should be overruled.

3. *Credibility*

Plaintiff's third assignment of error asserts that the ALJ improperly determined that Plaintiff's subjective complaints were not fully credible. Specifically, Plaintiff argues that the ALJ improperly relied on her lack of prescribed narcotics in his crecibiitly assessment, because she does in fact take Ultram, a "narcotic-like" medication and has taken narcotics in the past. Furthermore, Plaintiff contends that the ALJ improperly relied on her daily activities, as her ability to babysit does not show that she can do light work. Plaintiff also argues that the ALJ failed to account for her purported need to elevate legs, purported medicinal side-effects, and purported need for a cane. Plaintiff's contentions lack merit.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001). "If an ALJ rejects a claimant's testimony as incredible, he must

14

clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS,* 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20

15

minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240–41 (6th Cir.2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

Contrary to Plaintiff's contentions, the ALJ properly considered the requisite factors in making his credibility determination. As noted above, the ALJ considered that Plaintiff moved to Texas to care for a dying relative after her amended onset date, she failed to comply with conservative treatment. The ALJ also found leading questions from counsel prompted much of her testimony. Furthermore, the ALJ discussed Dr. Simons and Nurse De Haven's November 2009 report that Plaintiff's urine tested positive for marijuana instead of prescribed medications and Plaintiff's negativity regarding their recommendation of an epidural. (Tr. 20-21, 24, 677). Finally, as noted by the Commissioner, the ALJ correctly noted that Plaintiff no longer took narcotics—even if one of her most current medications resembled a narcotic—and, more importantly, that no one had suggested injections, let alone surgery, since her amended onset date.

16

Tr. 23, 50. The ALJ's findings are consistent with controlling law. *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (failure to follow prescribed treatment can discredit claimant's testimony); *Reynolds*, 424 F. App'x at 416-17 (routine and conservative treatment, including spinal blocks and injections, can discredit complaints of disabling pain). *see also* 20 C.F.R. § 404.1529(c)(3)(i) (authorizing an ALJ to consider activities when evaluating pain and functional limitations); *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 392 (6th Cir.2004) (permitting an ALJ to consider daily activities such as housework and social activities in evaluating complaints of disabling pain).

    Based on the foregoing, the undersigned finds that the ALJ's decision adequately sets forth the reasons for his credibility finding and shows he considered the required factors in determining plaintiff's credibility. *See* 20 C.F.R. § 416.929(c). In light of the ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. *See also Cruse v. Commissioner,* 502 F.3d 532, 542 (6th Cir.2007); *Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir.1997); *Gaffney v. Bowen,* 825 F.2d 98, 101 (6th Cir.1987). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

    *4. Alleged Vocational Errors*

    Plaintiff's final assignment of error asserts that the ALJ committed various vocational errors. Namely, Plaintiff asserts that the ALJ's hypothetical questions to the vocational expert failed to include Plaintiff's need for flexible production standards and schedules. Plaintiff further asserts the ALJ's hypothetical questions failed to consider

17

Plaintiff's use of a cane and her moderate limitations on persistence and pace. Plaintiff's assertions are unavailing.

The Sixth Circuit has held that a hypothetical question must only include a claimant's credible impairments and limitations. *See Smith v. Halter,* 307 F.3d 377, 378 (6th Cir.2001) (emphasis added); *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir.1993). Here, the ALJ's hypothetical question was supported by the medical record and other evidence, and Plaintiff has not shown that she had limitations greater than those reflected in the ALJ's hypothetical question and eventual RFC finding. However, as discussed above, the medical evidence did not support these alleged limitations, and there is no credible medical opinion that shows that Plaintiff had greater limitations than the ALJ found. Accordingly, the ALJ's decision is substantially supported in this regard.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| GWEN JACKSON, | Case No. 1:14-cv-177 |
| Plaintiff, | Beckwith, J. |
| v. | Bowman, M.J. |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).